Stewart, J.
The determination of the questions here made, it is conceded, depends upon the construction to be given to the contract between the parties and their rights and duties under it.
• We are not left without rules to govern us in the construction of this contract, for our supreme court has at different times had occasion to pass upon the question, and the rules which they have given are not only authoritative but consonant with reason.
Among them are the following : “ The first general maxim of interpretation is that it is not allowable to interpret what has no need of interpretation. When a writing is worded, in *378 clear and precise terms, when its meaning is evident and tends to no absurd conclusion, there, can be no reason for refusing to admit the meaning which it naturally presents.” Lawler v. Bent, 7 Ohio St. 340.
“That construction must be given to a contract which will harmonize with the meaning of the parties and secure justice to each of them.” Stein v. Steamboat, 17 Ohio St. 471, 476; Mintier v. Mintier, 28 Ohio St. 307.
Looking at this contract, what was the intention of the parties ? It was to make an exchange of the old Canal Bonds of the state for the new bonds, in accordance with the act of April 17,1885 (82 Ohio L. 139). That act provided that the Sinking Fund Commissioners might make that exchange by receiving the surrender of the old certificates and delivering to the holder, in lieu thereof, an equal number, and amount of the certificates of the funded debt authorized by the act.
By section 2 of the act the authority is given to the comsioners to sell and dispose of the new bonds at not less than their par value, and to apply the proceeds to the redemption of the outstanding certificates payable December 31, 1886.
This being the intention of the parties, they have provided how this exchange shall be made by the following provision of the contract:
“It is further agreed by and between said parties, that whenever said Netter shall deliver any of said outstanding six per cent. Canal Bonds to the said Commissioners of the Sinking Fund, he shall be entitled to receive the full, interest at six per cent, per annum thereon to the maturity of said bonds, to-wit: December 31, 1886, and he shall pay at said time to the Commissioners of the Sinking Fund, the interest at three percent, per annum on the new bonds received in exchange up to and including the 31st day of December,. ,1886.”
The meaning of this paragraph is not a matter of dispute between the parties, and if the defendant had procured and delivered to the commissioners all the old bonds no question could have arisen between them.
What would have been the practical result, between the parties, if this provision had been carried out?
*379 The privilege of making this exchange remained to the defendant up to and including January 1, 1887. For the purpose of illustration, we may use the following figures, which show that on January 1, 1887, the defendant would have turned over to the commissioners the balance of the old
bonds...........................;............................... $1,821,575 00
And the interest at 3 per cent, on the new bonds.........................................’............ 27,323 62
And the premium...................................... 38,890 63
Total...................................... $1,887,789 25
And would have received from the commissioners—
New bonds.................................................. $1,821,575 00
Interest on old bonds.................................... 54,647 25
Total.............................................. $1,876,222 25
The result of the exchange would have been that notwithstanding the new bonds bear date July 1st, 1886, and draw interest at 3 per cent, per annum payable semi-annually, the state would only have been required to pay out the face of the old certificates and the interest thereon to December 31,1886. In other words that the new bonds, although delivered to the derendant, would draw interest from the treasury of the state only from January 1, 1887.
But as it turned out, the defendant could not procure the old certificates, and it is claimed that the settlement is to be made under another provision of the contract, which reads as follows:
“ But in case any part of said two million, two hundred and forty thousand dollars of bonds are withheld by the owners or holders thereof, so that the party of the second part cannot get possession or control of the same on or before the said 1st day of January, 1887, then the said second party shall at said date pay to the Commissioners of the Sinking Fund of Ohio, at the American Exchange' National Bank in the city and state of New York, the par value of said outstanding Canal Bonds, and receive therefor the new bonds of the state of Ohio, as provided and in accordance with the act of the General As *380 sembly of Ohio hereinbefore referred to and advertisements made thereunder.’.’
This is undoubtedly a part of the contract which we are to look to in determining the rights .of. the parties, but in order to arrive at the intention of the parties we must look at the whole contract. Much stress is laid.upon the allegation of the answer that it was not practicable for the defendant to procure these bonds, and therefore it is claimed that, that contingency having arisen,.another mode of. settlement was provided. But it must be borne in mind that these provisions of the contract were made for the defendant’s benefit, in order that he might not lose his rights under the contract by a failure to fulfill it literally. But it was clearly hot intended to give him any advantage by reason of 'his failure to perfo'fm.' literally. Nor is it of any moment that the ' new bo’nds áre spoken of in the contract as bonds bearing date July 1, 1886, and to bear interest at the rate of 3 percent.‘fier annum,’ etc. These allegations are mere descriptions of the bonds which were prepared in order to make the exchange of bonds between July 1st, 1886, and December 31, 1886, and did not constitute an agreement by the commissioners that in any event interest would be payable thereon from July 1st, 1886. Nor do we think there is anything in the claim of counsel that the construction claimed for this contract by the state would lead to absurd and unjust results in case the state defaulted in its interest on June 30, 1886, and when the bonds fell due December 31, 1886, there would be a year’s interest thereon. If that emergency had arisen, then the defendant would have received his year’s interest on the bonds he offered for exchange, and would only be chargeable with six months interest on the new bopds. But it is further claimed that because nothing is said in this part of the contract about interest, and it. is specifically provided for in another part of the contract, viz.: that part which provides for an exchange of. the bonds, a clear inference arises that the accrued interest was not to be taken into account in cases of bonds delivered after January 1, 1887; that the maxim exprmio unius est exdusio alterius, applies with full force, and hence the. defendant was to receive bonds with six months accrued interests to the amount of the face of. the *381 old bonds in return for the payment by him to the state of the face of the old bonds. But this maxim does not apply when upon the face of the whole instrument a different intention can be ascertained. Lowry v. Barelli, 21 Ohio St. 324.
The difference sought tobe made in construing this contract between a settlement made December 31, 1886, and one made January 1, 1887, is not apparent to us, as whatever were the-duties of the state as to the payment of interest, the contraot' provides that the settlement between these parties is to be made January 1, 1887. At that time the new bonds are to be issued in place of the old ones, and the provision in case the bonds are not procured, which is a provision in the defendant’s interest, cannot under any rule of construction be held to give him an advantage. It is clear that there was but one result to be attained by this contract, which was the refunding-of the old debt. To accomplish that two methods were provided. One by exchange, and the other by payment. In each, the result' was to be the same, and it seems clear to us that the settlement-provided for January 1, 1887, was to be made as if made December 31, 1886. If the state paid the interest on: the old bonds, it was not to pay interest on the new bonds. To as+. sume the construction of this contract claimed by the defendant would result in this, that the court must find, that-in the . event the defendant exchanged the bonds as he agreed to do,,. he would’receive no .interest on the new bonds, but in case be,\ failed for any reason so to do, he would receive interest; .that.! is, if he parted with his money he received, .no interest, ... but if he kept his money in his pocket the state would .pay him three per cent, interest on it. , . • ■
Or, in another aspect of the case we must find that the- ■' commissioners, who were to dispose of bonds at. not less than • ■ their par value, agreed to dispose of bonds with at six -, month’s accrued interest at their face.
In effect, putting a premium on a failure to fulfill a con- • tract.
Under the provisions of this contract the-bonds were not to-be disposed of except by exchange of old bonds or by payment therefor, January 1, 1887; at that date they were to be- *382 exchanged for an equal.amount and- n-umber of. .the-old- bonds,- or-to be. paid for in money. In’either event the state was to receive the par. value of the new bonds.
These were the. plain provisions of the statute, under, which this contract was made.
. Again, it seems to us that the construction, contended for by defendant is unreasonable. The object to be attained was the exchange of bonds,, the cancellation of the old bonds and the issuing of new bonds in their place, not the issuing of new bonds while the old ones were outstanding. The advertisement of the Commissioners and the proposal of the defendant show that as well as the plain provisions of the contract subsequently made.
This manifest intention of the parties can be carried out by giving effect to each and every part of the contract according to the ordinary signification of the words used, and it would be manifestly against reason to adopt a construction that would tend to defeat rather than promote the object of the parties. Chamberlain v. Railroad, 15 O. S. 225, 246.
Giving then to the words “ par value ” in the provision of the contract last quoted their usual signification, requires the defendant to pay to the state for the old bonds exactly what he would have paid if he had bought them from other parties; the obligation of the state to pay the interest thereon to him would remain, and his obligation to pay back the interest upon the new bonds would remain, and he would receive the new bonds in accordance with the contract and the act of the General Assembly.
If, however, the interest upon the old bonds was not to be taken into account, and settlement was to be made as if made by the defendant with the state as the holder of the old bonds, with all the interest paid thereon, then we must find what will accomplish the intention of the parties. This can be done, and done only, by the defendant paying to the state the face of. the old bonds with the premium and receiving new bonds drawing interest from the 1st day of January, 1887.
Thus, whichever clause of the contract is used as a basis for this settlement, the same result will be attained and the man *383 ifest intention of the parties as gathered from the whole contract will be carried put. ........
D. K. Watson, Att’y-Gen’l, and Geo. K. Nash, for plaintiff.
Harmon, Colston, Goldsmith & Hoadly and Paxton & Warring-ton, for defendant.
In conclusion we are satisfied that in the settlement made by the parties, the defendant should have paid to the stat'e the face of old bonds and the premium on the new bonds, and received in exchange,therefor new bonds with a cancellation entered upon them of the interest from July 1st, 1886, to January 1, 1877. And whatever, amount the defendant paid to the state less than that, the state was entitled to recover from him.
We do not consider that in this case any question pan arise . as to an estoppel, or as to whether the rights of the state under this contract are any greater than those of a citizen of the state.
It follows from these conclusions that the court below erred in overruling the demurrer to this answer, and the judgment will therefore be reversed and the cause remanded with instruction to the court below to sustain the demurrer.